SCHULZE & CO., IN LIQUIDATION, *v.* ESTATE OF CASTRO.

APPEAL from the District Court of Mayagüez.

No. 81.—Decided May 19, 1904.

ACTION TO RECOVER POSSESSION—DESCRIPTION AND IDENTITY OF REAL ESTATE—
  OWNERSHIP.—In an action to recover possession not only must the real estate
  ·be described and identified, but the plaintiff must ·show his ownership thereof,
  in order thus to establish the right invoked.
APPEAL—JUDGMENT.—When a party has neither taken an appeal from a judg-
  ment in a case, nor joined in the appeal taken by the opposite party, he can-
  not attack, in the appellate court, any of the conclusions of law contained
  in such judgment, which will stand by virtue of law.

STATEMENT OF THE CASE.

This is an action to recover possession of land, instituted in the District Court of Mayagüez by Messrs. Schulze & Co., in liquidation, plaintiffs, against the estate of Asunción Castro, defendant, which case is pending before us on an appeal in cassation, now ordinary appeal, taken by the said firm from the judgment rendered by said court, the appellants having been successively represented before this Supreme Court by Attorney Antonio Alvarez Nava and Attorney Eduardo Acuña, and respondent by Attorney Pascasio Fajardo.

The aforesaid judgment reads as follows:

"Judgment.—In the city· of Mayagüez, October 22, 1902. An oral and public hearing was had of this civil action to recover possession of lands instituted by Messrs. Schulze & Co., in liquidation, domiciled in this city, represented, first by Attorney Luis

Campillo, afterward by Attorney Ramón Roura, and lastly by Attorney José de Diego, against the Estate of Asunción Castro, represented by Attorney Pascasio Fajardo y Cardona.

"Lorenzo Martínez Ohuviñas having instituted summary proceedings against Schulze & Co. to recover possession of property whereof he had been dispossessed by the latter, and praying that he be protected in said possession, the court by judgment rendered November 24, 1900, ordered that said Martínez Ohuviñas be reinstated in the possession of a piece of land lying between the ditch that had been opened, and which gave rise to said proceedings, and the brook 'Buena Vista,' of which possession he had been deprived by Messrs. Schulze & Co., who were adjudged to pay the costs and damages, while reserving to them such right as they might have to the ownership or final possession thereof, which they could assert in a proper action.

"On the strength of said reservation, Schulze & Co. instituted a declaratory action against the Estate of Asunción Castro, deceased wife of Lorenzo Martínez, alleging the following facts: That upon executing the judgment rendered in the summary proceedings to recover possession and reinstating Lorenzo Martínez in the possession of the land of which he claimed to have been deprived, the location of the boundary of the four plantations called 'Buena Vista,' 'Julia,' 'Paz,' and 'San Carlos,' had been entirely changed, and the same should in due time be restored to its former location as a result of their action to recover possession, said boundary being unchangeable because it constituted the line dividing the four plantations above-mentioned; that they, Schulze & Co., as well as the original owners of the plantation 'Buena Vista,' had been for more than half a century in possession of said property, and this was the reason why they had opened a ditch on lands appurtenant thereto, and along the boundary of the plantation now belonging to Lorenzo Martínez and the estate of Asunción Castro, formerly the property of the Delorisse brothers, said boundary being located on the west; that in rendering judgment in the proceedings to recover possession, the court had considered only the deed of sale executed by Leo Delorisse in favor of Lorenzo Martínez, May 27, 1896, before Notary Mariano Riera Palmer, of this city, from which it appears that the plantation 'Julia' belonging to Martínez is bounded on the east by the brook known as 'Buena Vista,' whereas such boundary has never existed, as shown by said deed, for the eastern boundary has always been the plantation 'Buena Vista,' so that said brook

was never either the boundary or the dividing line, as he showed by submitting records and titles of both the 'Julia' and 'Buena Vista' plantations, the same being as follows: Public deed executed in this city before Notary Pedro Arroyo, May 12, 1823, whereby Jaime Soler sold to Miguel Agostini four *caballerías** of land situated at a place known as 'Naranjales,' within this district, according to the metes and bounds therein specified, and by which it is seen that these four *caballerías,* or eight hundred *cuerdas,* which now constitute the plantations 'Tres Hermanos' (known as 'Merle'), 'Plato Indio,' and 'Buena Vista,' are not bounded on the west by any brook, but by a line running from a point on the boundary of several plantations to another point on the 'Casey' river and by said river; another deed, dated January 19, 1832, executed before said Notary Arroyo whereby Miguel Agostini sold to his brother Pedro a coffee plantation situated in *barrio* 'Casey,' within this municipal district, which plantation formed part of the four *caballerías* he had acquired from Jaime Soler, and it is to be noted that the points of demarcation are specified therein, clearly showing that on the southwest, starting from a *guaraguao* tree, it is bounded by property of Zenón Delorisse, as also on the west following the line which continues from said point to the northeast until it reaches the 'Casey' River, and at the bottom of the deed appears a certificate of the recorder of mortgages wherein it is clearly and specifically stated, with reference to said plantation, that it is bounded on the west by property belonging to Zenón Delorisse; public deed of April 8, 1869, executed before Notary Rafael Bello, whereby Pedro María Agostini sold to his brothers Juan and Gerónimo the whole of his share in the agricultural copartnership they had formed as owners of the plantations 'Buena Vista' and 'Juanita,' it being stated therein that the former is situated in *barrio* 'Rio Cañas Arriba' and consists of two hundred *cuerdas,* more or less, bounded on the west by lands belonging to the estate of Zenón Delorisse; another deed executed on the same day, namely, April 8, 1869, before the same notary, whereby Juan and Gerónimo Agostini dissolved partnership, the latter becoming sole owner of the plantation 'Buena Vista,' with the boundaries specified in the deeds attached to the record; a plot drawn up by Public Surveyor Pedro Tolossa, referred to in a certificate of January 29, 1902, wherein it is stated that he had before him an old contract of copartnership of the plantation 'Buena Vista,'

---

* TRANSLATOR'S NOTE.—A *caballería* in Porto Rico is equal to 7858 ares.

and that the boundary line with the Delorisse was a lane between the two plantations, which, although not describing a straight line from the *emajagua* to a stone in the 'Paula' brook constitutes the boundary which has separated them for over thirty years; the will executed on November 23, 1889, before Notary Santiago R. Palmer, whereby Teresa Maristany y Trabal declared who were her heirs, and after her death the plantation 'Buena Vista' became their property and was recorded in their name on September 25, 1894, it being specified in said record that aforesaid plantation, having an area of 211.80 *cuerdas*, is bounded on the west by the plantation belonging to the the Delorisse brothers; the record of proceedings concerning an award of property and a deed of December 15, 1898, which describe the plantation 'Buena Vista' as being bounded on the west by the plantation 'Julia,' it being worthy of note that in the year 1874, Luisa Geraut applied for a judicial survey of the plantation 'Julia' which was ordered and carried out, and upon arriving at the boundary of the property belonging to Gerónimo Agostini, it was agreed to continue the survey along said boundary, taking as a starting point an oak tree that stood at the turn of the road and ending at the point where the 'Buena Vista' brook empties into the brook 'Paula,' which demarcation Mrs. Geraut would by no means have accepted, if her boundary on the east could possibly have been the 'Buena Vista' brook; that the documents of the plantation 'Julia' tend to bear out this assertion, because María Sofía Simón de Sourche de Bascher, by deed of September 25, 1828, before Notary Pedro Arroyo, sold to Juan and Luís Zenón Delorisse, among other things, a plantation situated at the place called 'Casey,' bounded on the north and northeast by the river 'Casey' and the brook which empties in it, up to a point where stood the stump of a tree in the 'Paula' brook, bounded by the property of Miguel Agostini, from which point begins the eastern boundary along the lands of said Agostini, namely, the plantation 'Buena Vista,' in a straight line toward the south; because in the certificate issued by Pedro Rafael Escalona, recorder of mortgages, which is embodied in the accompanying deed, lands of Miguel Agostini are mentioned as forming the eastern boundary of the plantation 'Julia,' and said Agostini was the owner of plantation 'Buena Vista;' because summary proceedings having been instituted to acquire possession, which included the plantation 'Julia,' it was declared therein that said plantation was bounded on the east by the 'Casey' river and 'Buena Vista' brook, which boundary had been maliciously altered, wherefore said proceedings were void

and deceptive, statements being made therein that have no foundation whatever; that Schulze & Co. being aware that the boundaries of the plantation 'Buena Vista' had been altered, caused it to be so recorded in a public document, and sold said plantation to Federico Carlos Nielsen, who authorized aforesaid firm to institute the present action; that the plantation 'Julia' having been acquired by Lorenzo Martínez, during the existence of the conjugal partnership, the action for recovery of the land had to be brought against the Estate of Asunción Castro, wherefore, and inasmuch as the deforcement of said land by Lorenzo Martínez had caused considerable damages to the owners of the plantation 'Buena Vista,' by preventing them from cultivating the coffee growing thereon, and by pulling out lemon and other useful trees planted on said piece of land, and demolishing several bridges, besides compelling Schulze & Co. to incur expenses and pay costs in the summary proceedings instituted against them by Martínez, the present action was brought by Schulze & Co. The plaintiffs cited in support of their right the definition of 'ownership;' that no one shall be deprived thereof except by competent authority; that industrial fruits or produce belong to the owner; what is understood by possessor in bad faith, when the record of possession prejudices third parties; that Martínez cannot allege prescription; that the one who causes damage to another must indemnify him for the losses incurred; and that costs shall be paid by the litigant whose claims are rejected. The plaintiffs proceeded to set forth: That Jaime Soler sold to Miguel Agostini, by deed of May 12, 1823, eight hundred *cuerdas* of land situated at the place known as 'Naranjales,' with which *cuerdas* four plantations were formed named, respectively, 'Tres Hermanos,' 'Merle,' 'Plato Indio' and 'Buena Vista;' that on September 25, 1828, María Simona Soucher de Bascher sold to Juan Grippe and Luis Zenón Delorisse. among other properties, a coffee plantation known by the name of 'Sitio de Casey,' bounded on the east by lands belonging to Miguel Agostini, who still owned the eight hundred *cuerdas* above mentioned; that on January 19, 1832, Miguel Agostini sold to his brother Pedro Agostini, out of said eight hundred *cuerdas*, a coffee plantation in *barrio* 'Casey,' bounded on the west by the plantation of Simón Delorisse; bounded on the east by that of Miguel Agostini, the 'Buena Vista' being bounded on the west by the plantation 'Julia;' that the aforesaid plantation 'Buena Vista' has always maintained this boundary, whereas that of plantation 'Julia' was altered in the summary proceedings to acquire possession instituted in 1892, by designating as

boundary the 'Buena Vista' brook, instead of the plantation 'Buena Vista,' for the purpose of encroaching upon the lands of the latter. For all the foregoing reasons Schulze & Co. asked that judgment be entered declaring that Federico Carlos Nielsen is owner of the parcel of land comprised between the ditch dug by ·order of the plaintiffs and the 'Buena Vista' brook, possession of which land was given to Lorenzo Martínez Ohuviñas, by virtue of the summary proceedings referred to above, and adjudging the defendant estate to deliver said property, together with the products accrued or that should have accrued, from the time it was detained by Martínez, and to pay an indemnity for the damages caused by the detainer, including among these the expenses and costs incurred by Schulze & Co. in the aforementioned summary proceedings, as also all the costs of this suit.

"The Estate of Asunción Castro opposed the complaint, setting forth as facts: That, while admitting that Schulze & Co. had been absolute owners of the planation 'Buena Vista' for more than half a century, it denied that in digging the ditch on lands belonging to the plantation 'Julia' they had exercised an act of ownership, as was shown by the judgment rendered in the summary proceedings and the reinstatement ordered by the court, and it was not true that in executing aforesaid judgment any change had been made in the boundary points of the four plantations named 'Buena Vista,' 'Julia,' 'Paz' and 'San Carlos;' that the plantation 'Julia' has always been bounded on the east by a brook which was later designated by names as is customary in the country, it being called 'Buena Vista,' an assertion borne out by the very deeds that had been produced by Schulze & Co., wherein not only is it so designated, but another brook is given the name of Paula, into which the former empties, this being the starting point of the ditch, and not the 'Buena Vista' brook, as maliciously stated in the complaint; that the deed filed as No. 1 by the plaintiffs fixed the boundary on the west, starting from a point at one of the four plantations, which was most favorable to the defendants, and from said point on the west it was bounded by lands bordering upon the 'Casey' river, thereby showing that the boundary on the west consisted of lands that were subsequently sold to Juan José Simón de Souchet, and to Musiet (sic) Denoir, the former portion having been sold to Juan and Zenón Delorisse; and plantation 'Julia,' sold afterward by Leo Delorisse to Lorenzo Martínez, was bounded by a brook which can be no other than the one known by the name of 'Buena Vista,' this assertion

being substantiated by a 'deed of September 25, 1828, filed by Schulze & Co., wherein it is clearly seen that the boundary on the east is not the one maliciously represented by said Schulze & Co., to have completely changed the boundaries given in their deed; that by another deed of January 19, 1832, other boundaries are described. After examining other titles that had been produced, and alleging as legal grounds several opinions of the Supreme Court and sections of the Civil Code and articles of the Mortgage Law, the defendant prayed that judgment be rendered dismissing the complaint and denying the restitution of the lands claimed, with costs against Schulze & Co.

"A day having been set for the submission of evidence, the plaintiffs proposed a comparison of the deeds filed with the complaint, namely: (1) Deed of May 12, 1823, whereby Jaime Soler sold to Miguel Agostini four *caballerías* of land, executed before Notary Pedro Arroyo; (2) Deed of January 19, 1832, executed before the said notary Arroyo, whereby Miguel Agostini sold to his brother Pedro a coffee plantation; (3) The will executed by Pedro Agostini, on December 7, 1853, and the one executed before Santiago R. Palmer by Teresa Maristany y Trabal de Agostini, September 22, 1889; (4) Deed of sale of a joint ownership, executed on September 15, 1898, by Gerónimo Agostini, in favor of Schulze & Co., before Notary Mariano Riera Palmer; (5) Deed No. 454, of November 3, 1874, that is to say, the attested copy thereof issued March 2, 1880, by Notary Pedro María Martínez y Rivas; (6) Deed of September 25, 1828, executed before Pedro Arroyo, whereby María Ana Sofía Simond de Souchet sold to J. Grigg and Luis Zenón Delorisse, among other properties, a plantation in 'Sitio de Casey;' (7) The requisition of May 2, 1901, authorized by aforesaid Notary Mariano Riera at the instance of Schulze & Co.; (8) Deed of sale executed December 18, 1900, by Schulze & Co. in favor of Carlos Federico Nielsen, before Notary Mariano Riera. In addition to the foregoing, the plaintiffs filed the following instruments: Deed of June 18, 1834, executed before Notary José Antonio Rivas, whereby Miguel Agostini sold thirty-six *cuerdas* to Simón Mezes; deed of June 25, 1834, executed before said Notary Rivas, whereby Simón Mezes sold to Luis Diendoné the aforesaid thirty-six *cuerdas* of land; deed of May 11, 1840, before said Notary Rivas, executed by Francisco Mitil Diendoné in favor of Juan Basora & Co.; deed of June 17, 1847, before Notary Eugenio de Hostos, whereby Juan Basora & Co. sold a rural estate to Agustín Hardoin; deed of June 30, 1851, before Notary Pedro Arroyo, whereby Agustín

Hardoin sold the same estate to Ana Rosa de Ferrier; deed of July 28, 1856, before Acting Notary José Ramón Cestero, whereby Ana Rosa de Ferrier sold thirty-six *cuerdas* of land to Juan Federico de Hardoin; deed of January 30, 1857, before Eugenio de Hostos, whereby Juan Bautista Federico Hardoin sold aforesaid thirty-six *cuerdas* of land to Pedro Agostini; deed of April 21, 1825, before Pedro Arroyo, whereby Pedro Agostini sold a parcel of land, composed of one hundred and fifty *cuerdas*, to Santiago Bayrón; deed of July 15, 1825, before said Notary Arroyo, whereby Santiago Bayrón reconveyed the same parcel of one hundred and fifty *cuerdas* to Pedro Agostini; deed of April 22, 1845, executed before Eugenio de Hostos, whereby Pedro Agostini sold said lands to his brother Miguel Agostini; and deed of May 12, 1823, before Pedro Arroyo, whereby Jaime Soler sold a rural estate to Elías Horteaux; and another contract of partnership dated February 4, 1825, executed by Miguel, Pedro and Gerónimo Agostini, before Notary Pedro Arroyo. Plaintiffs called for various certificates from the clerk's office, and requested a comparison (with the original) of deed No. 39 executed by Schulze & Co., in liquidation, and Carlos Federico Nielsen. They further submitted a certificate from the registrar of property and asked that a judicial examination and ocular inspection be proceeded with, at the same time filing a list of witnesses who were to testify at the trial.

''The Estate of Asunción Castro submitted as evidence a deed executed before Eugenio Hostos, a former notary of this city, whereby the estate of Pedro Agostini purchased from Juan Bautista Federico Hardoin, January 30, 1857, a parcel of land composed of thirty-six *cuerdas*, which deed shows that when Agostini acquired said land it was bounded by property belonging to Delorisse; a water boundary line, i. e., the brook now known as 'Paula,' which line running along that brook to where it joins that of 'Buena Vista,' reached up to the small brook by the side of the former establishments of Agostini, where there is a flat stone, mentioned in aforesaid deed. The defendant asked that Notary Riera Palmer issue a certificate of the list or the inventory whereby Jaime Soler sold to Elías Horteaux before Notary Pedro Arroyo, a farm he owned at the place known as 'Naranjales,' specifying the boundaries thereof, and a certified literal copy of the deed of March 17, 1825, executed before Eugenio Hostos, whereby Elías Horteaux sold to Juan José Souche a farm situated at the place called 'Naranjales,' which formed part of the property acquired by Horteaux from Jaime Soler; another certi-

ficate from said Notary Riera, with reference to lands sold to Nicolás Maduro on April 21, 1826; another certificate from the same notary to the effect that Francisco Mitil Diendoné sold to Juan Basora & Co. one hundred *cuerdas* of land, with specification of the southern and eastern boundaries thereof; another certificate referring to a deed executed June 17, 1847, before Notary Hostos, wherein it is stated that Juan Basaro & Co. sold Agustín Hardoin two hundred *cuerdas* of land in *barrio* 'Furnais,' specifying the boundaries thereof; another certificate from the same notary as to the deed of June 30, 1851, executed before Notary Hostos, stating therein whether Agustín Hardoin did sell to Rosa del Ferrier a rural estate. They further prayed that a deed of July 28, 1856, on file at the notarial registry, whereby Rosa del Ferrier sold to Juan Bautista Federico Hardoin a tract of land situated in *barrio* 'Furnias,' and an attested copy of the deed of October 19, 1843, on file in the archives of Notary Hostos, now in the custody of Riera Palmer, with reference to the execution of a bond, be joined to the record; and that the clerk be called upon to bring to these proceedings certain facts relating to the summary proceedings to recover possession, instituted by Lorenzo Martínez against Schulze & Co. The defendant assented to the proof of judicial examination proposed by the plaintiffs, and cited or named witnesses who were to testify at the hearing.

"Said hearing was had on the 25th of September last in several sittings, during which a considerable amount of evidence was taken.

"The attorneys for the parties submitted arguments in behalf of their respective claims, and a day was set for the voting of the judgment which took place to-day, the same being unanimous.

"In the conduct of this case all the legal formalities have been complied with.

"Presiding Judge Arturo Aponte Rodríguez prepared the opinion of the court.

"Summary proceedings were instituted by Lorenzo Martínez against Schulze & Co. to recover possession of a tract of land whereof he had been dispossessed by the latter, who had opened a ditch which deprived him of his right to the land comprised between said ditch and the 'Buena Vista' brook, and said summary proceedings having been sustained it thereafter devolved upon the plaintiffs to establish whatever ownership and possession they might have to said tract of land, to the exclusion of Martínez or the Estate of Asunción Castro, this being the issue involved in the present action.

"The deeds submitted in these proceedings, which certainly are not few in number, instead of demonstrating in a clear and precise manner, as required by the law, that Schulze & Co. are the owners of the tract of land comprised between the ditch opened by them and the 'Buena Vista' brook, which gave rise to the summary proceedings to recover possession, create such a confusion of adjoining estates as to preclude all possibility of rendering a decision favorable to the exercise of the action of ownership, since they furnish no clear and positive evidence determining the dividing line between the plantations 'Buena Vista' and 'Julia' and thus fail to establish the identity of the land claimed.

"When real property is sought to be recovered, it is necessary not only to determine the same with precision, but also to establish the ownership thereof in the action instituted for the purpose, so as to leave no possibility of doubt as to the certainty of the right invoked.

"From none of the deeds filed in the case, nor from the certificates brought thereto, nor from the judicial inspection had, nor from the testimony of the witnesses examined, nor from the evidence taken as a whole, can it be inferred that Schulze & Co., have established either the ownership or the possession claimed by them.

"In view of the decisions of the Supreme Court of this country, rendered October 24, 1900, and May 10, 1902, we adjudge that we should dismiss and do dismiss the complaint herein, and accordingly released therefrom the Estate of Asunción Castro, composed of the widower Lorenzo Martínez Ohuviñas, and his legitimate children Ofelia, Aracelia, Rogelio, Ernestina and Augosto Martínez Castro, without special imposition of costs. Thus by this our judgment do we pronounce, order and sign."

From the foregoing judgment counsel for Schulze & Co. took an appeal in cassation, which was allowed, and the record having been sent up to this Supreme Court, after citation of the parties, said appeal was conducted as an ordinary appeal. Both parties having been given an opportunity to examine the record, a day was set for the hearing, at which the respective attorneys appeared.

*Messrs. Alvarez Nava* and *Eduardo Acuña*, for appellant.

*Mr. Fajardo*, for respondent.

MR. JUSTICE HERNÁNDEZ, after making the above statement of facts delivered the opinion of the court.

The findings of fact and conclusions of law of the judgment appealed from are accepted.

From the judgment of the District Court of Mayagüez, in so far as therein no special imposition of costs is made, the defendant estate has taken no appeal, nor has it joined that of the plaintiffs with respect to this particular, and therefore the decision rendered thereon must stand by virtue of the law.

In view of sections 358 and 371 of the Law of Civil Procedure, we adjudge that we should affirm, and do affirm, the judgment rendered by the District Court of Mayagüez, October 22, 1902, with costs of the appeal against the appellant. The record is ordered to be returned to said court with the proper certificate.

Chief Justice Quiñones and Justices Figueras, Sulzbacher and MacLeary concurred.